**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA CORNELISSEN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 1:13-CV-01751-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER<br><br>(Doc. 16) |

Plaintiff Linda Cornelissen, by her attorneys, Dellert Baird Law Offices, PLLC, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II and for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act").  The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.  Following a review of the complete record and applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards.

**I.     Background**

A. Procedural History

On May 6, 2010, Plaintiff applied for disability insurance benefits and supplemental security income.  Plaintiff alleges onset of disability on October 5, 2009.   The Commissioner initially denied

the claims on October 6, 2010, and upon reconsideration again denied the claims on January 3, 2011. On February 4, 2011, Plaintiff filed a timely request for a hearing.

On February 28, 2012, and represented by counsel, Plaintiff appeared and testified at a video hearing presided over by Timothy Steuve, Administrative Law Judge ("the ALJ"). See 20 C.F.R. 404.929 et seq. An impartial vocational expert, Kelly Bartlett ("the VE"), also appeared and testified.

On May 15, 2012, the ALJ denied Plaintiff's application. The Appeals Council denied review on August 31, 2013. The ALJ's decision thus became the Commissioner's final decision. See 42 U.S.C. § 405(h). On July 24, 2013, Plaintiff filed a complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

B. Relevant Facts

At the administrative hearing, Plaintiff was 52 years old. She testified that she lived with her boyfriend and adult daughter, who, diagnosed with schizophrenia, required Plaintiff's care in a "supervisory role." From at least 1997-2005, Plaintiff had worked as a janitor, engaging in strenuous physical labor and operating specialized janitorial equipment. She also cared for her disabled mother in in 2006 and 2007.

In 2007, Plaintiff began suffering from neck and back pain. She received epidural shots into her spine, which alleviated the pain the first two times, but were ineffective the third time. In 2009, Plaintiff stopped working due to her pain.

Plaintiff testified at the hearing that she experienced back pain on a daily basis, and "always" experienced very intense pain between the shoulder blades. She gave her back pain intensity level a seven or eight out of ten, and her shoulder blade pain nine out of ten, with ten being the kind of agony that would make her go to the emergency room. She also had mostly constant pain in her left shoulder and in both knees. Plaintiff testified that she could walk without assistance for about a block, stand still for about 15-20 minutes, and sit while looking down at her computer for about 15-20 minutes. She testified that she could lift about 10-20 pounds. Plaintiff did not need assistance dressing, bathing, or cooking, and she was able to do some housework such as laundry, vacuuming, and putting away dishes. Plaintiff was able to drive to do errands, but she always took someone with

2

her in case her pain became too extreme. On a typical day, Plaintiff would do some housework, go on the computer, feed the pets, and watch TV. Plaintiff would lie down and rest two or three times a day for about half an hour at a time. Her daughter assisted her with laundry and shopping. Plaintiff cared for her daughter by reminding her to take her medication and groom herself.

### C. Relevant Medical Record

Beginning in June 2009, Plaintiff sought treatment at Tri-County Family Medical Center ("Tri-County") for lower back pain. AR 298. Plaintiff had appointments at Tri-County approximately once a month from June 2009 to July 2010. AR 281-198. Her medical visit notes were mostly signed by Chris Dewey PA-C, but were signed by Gregory Dunford, M.D. in July 2010.

In December 2009, Plaintiff was diagnosed by orthopedist Jerry Smith, M.D. with "advanced degenerative changes in the lumbar spine with predominantly a facet syndrome." AR 302. Dr. Smith recommended injections, and possibly surgery depending on her response. AR 302. Plaintiff was taking Skelaxin, Tramadol, and Ibuprofen for pain. AR 300.

In January 2010, Plaintiff reported to Dr. Smith eighty percent relief in pain in the low back but continued to have severe neck pain. AR 309. He noted that she has severe cervical stenosis and foraminal stenosis. AR 310. He prescribed physical therapy for her low back with the view towards returning to function and assessing whether she could return to work. AR 310. In February 2010, Plaintiff followed up for EMG nerve conduction studies which were normal. AR 311-312. In March 2010, Dr. Smith noted that physical therapy had not helped, but rather, worsened her low back pain. AR 313. In July 2010, Plaintiff reported that the injection she received in March from Dr. Smith had given her two months of relief of her neck, shoulder, and arm pains on the left side. She had also had several months of back and leg relief from prior facet injections into the lumbar spine. However, her pain had returned. AR 315. Dr. Smith noted that her insurance had been discontinued and she could not undergo additional injections in July. AR 316. Plaintiff was still taking Skelaxin, Tramadol, and Ibuprofen. AR 315. Plaintiff did not receive medical treatment from July 2010 until October 2011.

In October 2011, Plaintiff was admitted to the emergency room because of low back pain, and found to have a kidney infection resulting from a urinary tract infection. AR 416. The doctor noted that she had chronic back pain because she was out of her medication (Tramadol). He

indicated that there were no new symptoms. AR 417. Plaintiff improved with Tramadol and continued taking it upon discharge. AR 416, 421. In August 2012, Plaintiff was taken off Tramadol and prescribed Tylenol. AR 428.

### D. Vocational Expert Testimony

At the administrative hearing, vocational expert Kelly Bartlett classified Plaintiff's past work as janitor (DOT # 382.664-014, medium, semi-skilled, SVP 3) and companion (DOT # 309.677-010, light, semi-skilled, SVP 3).

For the first hypothetical question, the ALJ directed Ms. Bartlett to assume a hypothetical person who had a residual functional capacity ("RFC") to perform a range of light work and could lift up to twenty pounds occasionally, lift ten pounds frequently, stand or walk for approximately six hours in an eight-hour day and sit for approximately six hours in an eight-hour day with normal breaks, climb ramps or stairs occasionally, stoop, kneel, crouch, and crawl occasionally, balance regularly, and never climb ladders, ropes, or scaffolds. Ms. Bartlett opined that the hypothetical person could perform Plaintiff's past work as a companion and could perform other work of cashier (DOT # 211.362-101, light, unskilled, SVP 2) and mail clerk or sorter (DOT # 209.687-026, light, unskilled, SVP 2).

For the second hypothetical question, the ALJ directed Ms. Bartlett to assume the same hypothetical person described in the first hypothetical who had an additional limitation of occasional overhead reaching bilaterally. Ms. Bartlett opined that the second hypothetical person could still perform Plaintiff's past work as a companion.

For the third hypothetical question, the ALJ directed Ms. Bartlett to assume a hypothetical person of the same age, education, and work experience as Plaintiff "in that RFC." Ms. Bartlett opined that the hypothetical person could perform the cashier and mail clerk work indicated in the second hypothetical.

The ALJ then asked Ms. Bartlett whether a requirement to be able to lie down throughout the day would have an effect on the availability of work. Ms. Bartlett testified that it would eliminate the availability of work.

### E. Disability Determination

After considering the evidence, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. He found that Plaintiff had lumbar and cervical degenerative disc disease, which significantly limited her ability to perform basic work activities. The ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment. He found that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with postural limitations: lift and carry 10 pounds frequently and 20 pounds occasionally; sit for six hours, and stand/walk for about six hours in an eight-hour workday with normal breaks; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and reach overhead occasionally bilaterally. The ALJ concluded that Plaintiff was not capable of performing her past relevant work as a janitor but that considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Hence, he determined that Plaintiff could make a successful adjustment to other work and was found "not disabled."

## II. Discussion

Plaintiff argues two issues for appeal: 1) whether the ALJ's RFC assessment was supported by substantial evidence; and 2) whether the ALJ failed to fulfill his duty to develop the record by failing to obtain an opinion by an examining physician who indicated that he had completed disability forms.

### A. The Five-Step Sequential Analysis

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment(s) must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.

42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). In the five-step sequential review process, the burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Id.* at 1098–99; 20 C.F.R. §§ 404.1520, 416.920.

In the first step of the analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g).

B. Standard of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). If an ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence, this Court must uphold the ALJ's determination that the claimant is not disabled. *See, e.g., Ukolov v. Barnhart*, 420

6

F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch*, 400 F.3d at 679.  Where the evidence as a whole can support either outcome, the Court may not substitute its judgment for the ALJ's, rather, the ALJ's conclusion must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### C. The ALJ's RFC Finding

Plaintiff contends that the ALJ based his RFC analysis solely on reviewing physician Dr. Ginsburg's opinion rendered in October 2010. Dr. Ginsburg did not review medical evidence produced after October 2010; specifically, MRIs conducted in January 2012 which showed a worsening condition. Plaintiff argues that reliance on a non-examining physician's opinion alone does not constitute substantial evidence by which ALJ decisions must be supported.  The Commissioner responds that the January 2012 MRIs do not demonstrate a worsening condition, and Dr. Ginsburg's opinion encompassed all findings in the January 2012 MRIs.

*1. Applicable Law*

As an intermediate step between steps three and four of the sequential analysis, the ALJ must assess the claimant's RFC**.**  *See* 20 C.F.R. § 416.920(e). A claimant's RFC is the most a claimant can still do despite his limitations. *Smolen v. Chater,* 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 404.1545(a)).  A claimant's RFC is not a medical determination, but is an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence. See SSR 96-5p[1]; 20 C.F.R. § 404.1527(e), 416.927(e). "Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." SSR 96-5p.

---

[1] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy .... Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell v. Sullivan,* 947 F.2d 341, 346 n. 3 (9th Cir. 1991) (en banc) (internal quotations and citations omitted).

In assessing a claimant's RFC, an ALJ must consider all relevant evidence in the record, including "medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do," and the effects of symptoms, including pain reasonably attributable to the medical condition. SSR 96-5p; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The RFC assessment considers only functional limitations and restrictions that result from the claimant's medically determinable impairment or combination of impairments. SSR 96–8p.

   *2. Dr. Ginsburg's Opinion*

In October 2010, Brian Ginsburg, M.D. reviewed Plaintiff's record in order to complete a Physical Residual Functional Capacity Assessment. AR 344-349, 350-352. He diagnosed her with chronic lower back pain and chronic neck pain. Dr. Ginsburg recommended a light residual functional capacity with the ability to stand or walk for about six hours in an eight hour workday, sit for about six hours in an eight hour work day. Dr. Ginsburg limited Plaintiff to occasional stooping, kneeling, crouching, and crawling, and never climbing ladders, ropes, or scaffolds.  AR 346, 351.

The ALJ did not find evidence that contradicted Dr. Ginsburg's opinion. His RFC assessment adopts Dr. Ginsburg's recommendations with the additional limitation of reaching overhead occasionally bilaterally.

   *3. Analysis*

Here, Plaintiff's argument that the ALJ based his RFC analysis solely on Dr. Ginsburg's opinion is unsubstantiated. The ALJ's written decision demonstrates that he considered Plaintiff's medical record including reports from treating physician Dr. Smith and examining physician Gregory Dunford, M.D., as well as records submitted by Plaintiff's attorney that were not considered by Dr. Ginsburg. The ALJ also considered nonmedical evidence in assessing Plaintiff's RFC, including Plaintiff's testimony regarding her symptoms and regarding what she is able and unable to do on a regular basis. Although the ALJ adopted Dr. Ginsburg's opinion, the RFC is a distinct finding based on the ALJ's consideration of Dr. Ginsburg's opinion, independent consideration of the medical record, and the relevant nonmedical evidence.

Specifically, the ALJ considered Plaintiff's medical records from 2009-2010. He discussed

observations in 2009 by Chris Dewey, PA-C, Plaintiff's treatment and physical therapy, Dr. Dunford's 2010 diagnosis of spinal stenosis, Dr. Smith's 2009 orthopedic observations and review of her MRIs. The ALJ also considered the evidence submitted after the hearing that was not considered by Dr. Ginsburg. The ALJ noted that in 2012 Plaintiff was able to manage her pain symptoms with over-the-counter medications. In addition, the ALJ noted that Plaintiff "is not as incapable of self-care as one might expect for a completely disabled individual," considering the evidence of her ability to care for herself, care for her daughter, do housework, drive, and walk. AR 27.

Further, the medical evidence submitted after the hearing by Plaintiff does not warrant a more restrictive RFC. Plaintiff did not seek treatment for her back or neck pain after July 2010, but stated at the hearing in February 2012 that her pain was always at seven to nine out of ten. Plaintiff's visit to the emergency room in 2011 was because of a urinary tract infection and because she was out of her pain medication, which was eventually discontinued. The other 2011 records are regarding menopause management. The August 2012 record shows that Plaintiff was being taken off Tramadol to take only Tylenol, indicating an *improvement* in symptoms. The Court agrees with the Commissioner's argument that the 2012 MRIs do not support a further restrictive RFC. They reveal the substantially similar observations and diagnoses as previous examinations and MRIs in 2009 and 2010, and Plaintiff has not provided any evidence that the 2012 MRIs in fact indicate a worsening condition.

To be clear, conflicting physicians' opinions are not at issue here. There are no physicians' opinions in the record that contradict Dr. Ginsburg's. Therefore, Plaintiff's law regarding substantial evidence is out of context. She cites cases that state that reliance on a non-examining physician alone is not substantial evidence to support *specific and legitimate reasons to discredit a treating physician's opinion*. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). These cases do not support Plaintiff's contention that reliance on a non-examining physician alone is not considered substantial evidence to support *an RFC*. Regardless, the ALJ did not rely on Dr. Ginsburg's opinion alone, but also on the medical record and nonmedical evidence. Substantial evidence means "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Here, the ALJ reasonably concluded based on consideration of the relevant record that Plaintiff was capable of light work subject to certain restrictions; hence, the ALJ's RFC assessment was supported by substantial evidence.

### D. The ALJ's Duty to Develop the Record

Plaintiff argues that the ALJ contravened his duty to develop the record because the ALJ did not to attempt to obtain a disability form, which Dr. Dunford indicated he had completed. The Commissioner responds that the ALJ discharged his duty by leaving the record open for thirty days after the hearing to allow Plaintiff to obtain additional medical evidence.

The ALJ has an affirmative duty to "fully and fairly develop the record and to assure that the claimant's interests are considered" even when the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (*quoting Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)); *Smolen*, 80 F.3d at 1273. "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (*citing Tonapetyan v. Halter*, 242 F.3d at 1144, 1150 (9th Cir. 2001)); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)(the duty to develop is triggered *only* when there is ambiguous evidence or when the record is inadequate for proper evaluation of the evidence).

There is some confusion as to whether Dr. Dunford's opinion exists. At the hearing the ALJ inquired:

> Okay. The other thing I wanted to ask about was when I was looking at 2-F, which is the records from Tri-County Family Medical in July of 2010, the doctor indicates completing some disability forms, but I didn't see any forms in the file from the doctor. I didn't know if they existed or if they just hadn't shown up. What was going on with those?

Plaintiff's attorney, Gina Fazio, responded:

> I did see a mention of that too and I don't have those forms, so I wasn't sure whether they were for State disability or not. But, I don't have them.

The ALJ then asked:

> All right. Well, how long do you think we'll need to leave the record open for those records

from Community Regional?

The ALJ and Plaintiff's attorney agreed that the record would remain open for thirty days. Plaintiff argues that the ALJ's statement above means that he found that the record was incomplete. Plaintiff also believes that the record was left open exclusively for Plaintiff to submit the Community Regional records from 2011 and 2012, and not for Plaintiff to submit the allegedly missing report from Dr. Dunford from Tri-County Family Medical.

Actually, the record was not incomplete such that the ALJ's duty to supplement the record was triggered. Plaintiff, who bears the burden of proof as to her impairments and limitations, was also unaware of the existence of the document and failed to obtain the document. The ALJ noted in his written decision that neither Dr. Dunford nor any of Plaintiff's other treating or examining physicians provided their opinions as to Plaintiff's functional ability. However, reviewing physician Dr. Ginsburg provided an opinion regarding Plaintiff's functional ability, and based on that opinion and the medical evidence from Plaintiff's treating and examining physicians, as well as her testimony and other relevant evidence, the ALJ made an RFC determination. The record was not inadequate for the proper evaluation of the evidence. The ALJ's RFC determination was supported by substantial evidence in the record without a functional ability opinion from Dr. Dunford.

In addition, even if the ALJ's duty to supplement the record was triggered, the ALJ sufficiently discharged this duty by leaving the record open for thirty days after the hearing. The ALJ may discharge this duty in several ways, including keeping the record open after the hearing to allow supplementation of the record. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir.1998); *Smolen*, 80 F.3d at 1288.

Moreover, it is the plaintiff's burden to show that prejudice resulted from an error in failing to develop the record. *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011). A "mere probability" of prejudice is not enough to remand the case; the circumstances must show a "substantial likelihood" of prejudice. *Id.* at 887, 888. Plaintiff argues that the ALJ's failure to request Dr. Dunford's report constituted harmful error because, without the report, the ALJ had insufficient evidence on which to rely in making the RFC determination. As discussed above, the ALJ's RFC determination was supported by substantial evidence without a report from Dr. Dunford. There is no evidence that

suggests that Dr. Dunford's report, if it exists, would have influenced the ALJ to find a more restrictive RFC. Plaintiff has not demonstrated, nor does the record demonstrate, a substantial likelihood of prejudice.

In sum, the ALJ's duty to develop the record further was not triggered and he was not required to request the report. However, even if it was, this duty was discharged by keeping the record open, and Plaintiff was not prejudiced by a failure to request the report.

### III.     Conclusion and Order

For the foregoing reasons, the Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   **February 4, 2015**                          **/s/ Sandra M. Snyder**
                                                                        UNITED STATES MAGISTRATE JUDGE